UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
CHRISTOPHER LACCINOLE,              )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   CA No. 19-605 WES
                                    )
APPRISS, INC. and                   )
DOES 1-10 INCLUSIVE,                )
                                    )
        Defendants.                 )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Before the Court is Defendant Appriss Inc.'s Motion to Dismiss, ECF No. 6. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

I.  Background

Plaintiff Christopher Laccinole ("Laccinole") is a resident of Narragansett, Rhode Island. Complaint ("Compl.") ¶ 16, ECF No. 1-1. Defendant Appriss, Inc. ("Appriss") is a data and analytics company which allegedly contracts with the State of Rhode Island to operate a victim notification service that uses an automated telephone dialing system ("ATDS") and an artificial or prerecorded voice. Id. ¶¶ 1-3, 23, 28, 42.[1]

---

[1] Appriss calls this victim notification service Rhode Island Victim Information and Notification Everyday ("RI-VINE"). See Mot. to Dismiss 2. Although Laccinole does not use this

Laccinole alleges that, in September 2019, he "began receiving calls from Appriss." Id. ¶ 22. Laccinole denies having signed up for, or otherwise authorized, this service. Id. ¶¶ 5, 27. The calls purportedly did not "state clearly at the beginning of the message the identity of the business, individual, or other entity calling," nor did they "state clearly the telephone number or address of such business, other entity, or individual." Id. ¶¶ 24-25. Laccinole could not unsubscribe from the service because doing so required a PIN number, which he lacked, having not registered in the first place. Id. ¶¶ 26-27.

Laccinole researched the service and determined that it was "operated by Appriss." Id. ¶ 28. He then sent a letter to Appriss asking to receive no further calls, which letter Appriss received. Id. ¶¶ 29-33. Nevertheless, Laccinole alleges that Appriss subsequently contacted him at least sixty times. Id. ¶¶ 6, 34. The calls were repetitious, sometimes occurring more than a dozen times a day and at intervals of thirty seconds. Id. ¶¶ 40-41.

On October 18, 2019, Laccinole sued Appriss and several unnamed Defendants. Counts I and II allege violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), specifically

---

appellation, the Court concludes from his Complaint that he refers to the same service. See Compl. ¶¶ 2-3 ("Appriss runs a 'victim notification' service . . . [and] contract[s] with states such as Rhode Island to provide hourly updates on the status of alleged offenders.").

47 U.S.C. § 227(b)(1)(A)(iii) (Count I), and 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200 (Count II); Count III alleges violations of the Rhode Island Deceptive Trade Practices Act ("DTPA"), R.I. Gen. Laws § 6-13.1-1 et seq.; Count IV alleges violations of the Rhode Island Privacy Act, R.I. Gen. Laws § 9-1-28.1. Compl. ¶¶ 76-94.

On November 26, 2019, Appriss moved to dismiss for failure to state a claim per Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss 1. Appriss contends that it is a common carrier, and thus exempt from liability under the TCPA. See id. at 4-7. Furthermore, Appriss asserts that, even if it is not a common carrier, the calls in question were made for non-commercial and emergency purposes and are therefore exempt from TCPA liability. See id. at 7-8. Moreover, Appriss argues that Laccinole's DTPA claim fails because Appriss is "duly registered to do business in Rhode Island," and because his allegations indicate that he was not deceived by Appriss. See id. at 8-9. Finally, Appriss contends that Laccinole's privacy claim is meritless because he could have ignored the calls or unsubscribed from the service, and furthermore calls to a cell phone do not constitute unreasonable invasions of physical solitude or seclusion. See id. at 10-11.

II. Standard of Review

When considering a motion to dismiss for failure to state a

3

claim, a court must first cast aside conclusory legal statements and recitals of elements. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). It must then accept well-pleaded facts, "draw[ing] all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). If the surviving factual matter states a plausible claim for relief, then the motion must be denied. Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.).

III. Discussion

Appriss asks this Court to take judicial notice of two Rhode Island Department of Corrections ("R.I. D.O.C.") webpages related to RI-VINE.[2] Taking judicial notice is permissible in a 12(b)(6) context. See United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 208 (1st Cir. 2016). Furthermore, "a practical, commonsense approach is best for determining what materials may be properly considered on a motion to dismiss." Rederford v. U.S. Airways, Inc., 586 F. Supp. 2d 47, 50 (D.R.I. 2008), aff'd sub nom. Rederford v. U.S. Airways, Inc., 589 F.3d 30 (1st Cir. 2009) (internal quotation marks and citation omitted).

---

[2] Federal courts can take judicial notice of facts on government websites where those facts are "not subject to reasonable dispute." Fed. R. Evid. 201(b); Gent v. CUNA Mut. Ins. Soc'y, 611 F.3d 79, 84 n.5 (1st Cir. 2010).

4

Therefore, "a court may properly consider not only the complaint, but also the facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Id. (internal quotation marks and citation omitted).

A. TCPA Claims

1. Is Appriss a Common Carrier?

As an initial matter, the Court must deal with Appriss's averment that it is a common carrier, a mere conduit for calls designed, initiated, and regulated by R.I. D.O.C. See Mot. to Dismiss 4-7. This is an important question, since the TCPA "generally does not apply to common carriers." See Payton v. Kale Realty, LLC, 164 F. Supp. 3d 1050, 1057 (N.D. Ill. 2016). A common carrier is an entity that (1) "hold[s] itself out indifferently to all potential users," or, if relevant, all potential users within a given class, and (2) "allow[s] customers to transmit messages of their own design and choosing." Rinky Dink, Inc. v. Elec. Merch. Sys., No. C13-1347-JCC, 2015 WL 778065, at *5 (W.D. Wash. Feb. 24, 2015). However, even a common carrier may be liable under the TCPA if it is highly involved in the illegal use of its services, or if it has actual notice of such use but fails to prevent it. Id. at *4.

The Court takes seriously Appriss's assertion that its role vis-à-vis the victim notification service has been misrepresented

by Laccinole, see Mot. to Dismiss 3-4, and it takes judicial notice of certain facts on the two R.I. D.O.C. webpages as requested by Defendant, id. at 2, n.1. Some of the information contained on the webpages arguably stands in tension with Laccinole's allegations.[3] However, the Court is not persuaded that the sparse, ambiguous, and colloquial language of the webpages clarifies Appriss's identity as a common carrier. Nor, given the plaintiff-friendly standard of review, does the Court find that the information gleaned from the webpages materially affects its analysis of Laccinole's various claims.

Ultimately, the precise relationship between Appriss and the victim notification service is fact-intensive and cannot be resolved at this early stage of the proceedings. See Couser v. Pre-paid Legal Servs., Inc., 994 F. Supp. 2d 1100, 1101, 1103 (S.D. Cal. 2014) (denying motion to dismiss brought by "intermediate software provider" claiming that it merely provided a platform used by its customers to initiate calls to the plaintiff); see also Linlor v. Five9, Inc., No. 17CV218-MMA (BLM), 2017 WL 2972447,

---

[3] For instance, whereas Laccinole asserts that Appriss "runs a 'victim notification' service," Compl. ¶ 2, the webpages state that "RI-VINE" is "provided" by R.I. D.O.C. and is "run[]" by an individual in its Office of Victim Services, see http://www.doc.ri.gov/victims/whatis_vine.php (last visited Mar. 30, 2020); http://www.doc.ri.gov/victims/index.php (last visited Mar. 30, 2020).

at *4 (S.D. Cal. July 12, 2017) ("[This] Court, like other district courts have done in analogous cases, declines to find as a matter of law, at the pleadings stage, that Defendant is a common carrier exempt from liability under the TCPA.").

Having bracketed the question of whether Appriss is a common carrier, the Court will proceed to ask whether, given the Complaint's well-pleaded allegations, Laccinole has stated plausible claims for relief under the TCPA and its implementing regulations.

> 2. Unauthorized, Non-Emergency Calls to a Cellular Telephone Using an ATDS or Artificial or Prerecorded Voice (Count I)

In Count I, Laccinole alleges violations of 47 U.S.C. § 227(b)(1)(A)(iii), which, in relevant part, renders it unlawful for

> any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, or any service for which the called party is charged for the call[.]

See Compl. ¶¶ 76-80. Accordingly, on these facts, to make out a plausible claim for relief under this provision, the plaintiff must plead (1) that the defendant made a telephone call (2) for non-emergency purposes or without the called party's prior express consent (3) using an automatic dialing system or artificial

7

or recorded voice (4) to a telephone number assigned to a cellular telephone service. See 47 U.S.C. § 227(b)(1)(A)(iii).

Laccinole describes in detail the number and nature of the calls he allegedly received from Appriss. Compl. ¶¶ 22-26, 34, 37-38, 40-41, 48. He further asserts that Appriss employed an ATDS and that the calls used an artificial or prerecorded voice. Id. ¶¶ 23, 42. In support of these averments, he describes how the calls conveyed an identical message in a uniform voice, rhythm, and intonation. Id. ¶ 23. Additionally, the calls were rapid and repetitious. Id. ¶¶ 40-41. Laccinole also alleges that he never consented to be called by Appriss, id. ¶¶ 43-44; that the calls continued after he asked Appriss to cease and desist, id. ¶¶ 29-34; and that the calls were for a non-emergency purpose,[4] id. ¶ 47. Finally, he alleges that the calls were made to his cellular telephone. See id. ¶ 44.

Some of these allegations just barely escape disqualification as threadbare recitations of elements. However, pro se pleadings must be construed liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Furthermore, "claims based on alleged violations of the TCPA do not require the usual level of particularity." Rosenberg

---

[4] The emergency exception does not apply where an entity calls an individual who has previously asked not to be contacted. See, e.g., Coleman v. Rite Aid of Georgia, Inc., 284 F. Supp. 3d 1343, 1346-47 (N.D. Ga. 2018). Such is allegedly the case here. See Compl. ¶¶ 29-34.

8

v. LoanDepot.com LLC, No. 19-10661-NMG, 2020 WL 409634, at *10 (D. Mass. Jan. 24, 2020)). Therefore, the Court finds that Laccinole states a plausible claim for relief under 47 U.S.C. § 227(b)(1)(A)(iii).[5]

       3. Violations of Do-Not-Call Protections (Count II)

In Count II, Laccinole alleges violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).[6] See Compl. ¶¶ 81-84. Section 227(c) protects the privacy rights of residential telephone subscribers by providing for the creation of a do-not-call list. See 47 U.S.C. § 227(c)(1). The FCC subsequently promulgated 47 C.F.R. § 64.1200(d), which states in relevant part:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

---

[5] Appriss's invocation of the non-commercial exception is unavailing, since it pertains to calls made in violation of 47 U.S.C. § 227(b)(1)(B), whereas Laccinole in Count I asserts a violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(2)(B)(i).

[6] Laccinole refers broadly to 47 C.F.R. § 64.1200 in Count II of his Complaint, but the Court infers that he means to bring a claim under section 64.1200(d), since this portion of the code implements 47 U.S.C. § 227(c). See Charvat v. NMP, LLC, 656 F.3d 440, 443 (6th Cir. 2011). Moreover, "a violation of 47 C.F.R. § 64.1200(d) can give rise to a claim under 47 U.S.C. § 227(c)(5)." Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017).

9

Additionally, persons or entities initiating calls for telemarketing purposes must, at a minimum, (1) create a written policy pertaining to the do-not-call list; (2) give adequate do-not-call list training to personnel involved with call-making; (3) record, maintain, and honor do-not-call requests; and (4) provide identifying information to called parties (i.e., the name of the individual caller, the name of the person or entity on whose behalf that individual is calling, and a telephone number or address where the entity or person can be contacted). See 47 C.F.R. § 64.1200(d)(1)-(4).

Section 227(c) concerns unwanted "telephone solicitations," defined in relevant part as "telephone call[s] or message[s] for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" See 47 U.S.C. § 227(a)(4), (c)(1). Similarly, section 64.1200(d) targets telemarketing calls, which are "telephone call[s] or message[s] for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." See 47 C.F.R. § 64.1200(d), (f)(12).

Therefore, in order to make out a claim under these provisions, a plaintiff must plead, at minimum, that (1) he or she is a residential telephone subscriber who (2) received a call made for purposes of telemarketing or solicitation purposes (3) from a person or entity that has not implemented the requisite procedures

(as enumerated above). See 47 U.S.C. § 227(a)(4), (c)(1); 47 C.F.R. § 64.1200(d), (f)(12).

Laccinole alleges that Appriss called his cellular telephone, which uses a number registered with the national do-not-call list. Compl. ¶¶ 22, 45. This creates the presumption that he is a "residential subscriber" for purposes of the TCPA's do-not-call protections.[7] See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003). However, Laccinole does not allege that the calls he received "encourag[ed] the purchase or rental of, or investment in, property, goods, or services." See 47 U.S.C. § 227(a)(4), (c)(1); 47 C.F.R. § 64.1200(d), (f)(12). Furthermore, his allegations concerning Appriss's supposed failure to implement the requisite procedures are not well-pleaded and must be discarded. Therefore, Laccinole does not state a plausible claim for relief under 47 U.S.C. § 227(c) or 47 C.F.R. § 64.1200(d).

---

[7] Some federal courts have sharply distinguished residential telephones and cellular telephones: "[T]he structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'[.]" Morgan v. U.S. Xpress, Inc., No. 3:17-CV-00085, 2018 WL 3580775, at *1 (W.D. Va. July 25, 2018) (internal citation omitted); see also Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014) ("Practical realities support a distinction between residential and cellular lines."). Ultimately, whether and to what extent Laccinole is a "residential subscriber" is not determinative here, since, crucially, the alleged calls from Appriss were not made for solicitation or telemarketing purposes.

C.  R.I. DTPA (Count III)

The DTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I. Gen. Laws § 6-13.1-2. It should be "liberally construed." Long v. Dell, Inc., 984 A.2d 1074, 1081 (R.I. 2009).

To invoke the protection of the DTPA, "a plaintiff must establish that he or she is a consumer[.]" Kelley v. Cowesett Hills Associates, 768 A.2d 425, 431 (R.I. 2001) (tenant not a consumer vis-à-vis her landlord in the context of transaction involving new kitchen flooring) (emphasis added). The R.I. General Assembly has directed that, in interpreting the DTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts related to § 5(a) of the Federal Trade Commission Act[.]" R.I. Gen. Laws § 6-13.1-3.

Section 5(a) does not define "consumer." See F.T.C. v. IFC Credit Corp., 543 F. Supp. 2d 925, 936 (N.D. Ill. 2008). In IFC Credit Corp., however, the district court emphasized a commonsense understanding of the word that encompassed economic activities like purchasing and utilizing commercial goods or services.[8]  Id.

---

[8]
> Merriam–Webster Collegiate Dictionary's definition of consumer: 'one that consumes: as a.: one that utilizes economic goods.' (Eleventh Ed.2003). The Oxford English Dictionary defines

at 938.

Laccinole describes himself as a "consumer" in a conclusory manner, see Compl. Intro., but he does not allege that he purchased goods or services from Appriss, nor that he was asked to purchase goods or services by Appriss. Although he asserts that Appriss gathers and sells data for profit, id. ¶ 1, he does not offer well-pleaded facts to show that he himself has the necessary vendor-consumer relationship with Appriss. See Kelley, 768 A.2d at 431. Thus, Laccinole fails to state a claim under the DTPA.

D. R.I. Privacy Act (Count IV)

Laccinole maintains that Appriss, by calling him "incessantly" even after being told to stop, see id. ¶¶ 34-35, 57-58, violated his statutory right under the Privacy Act to be "secure from unreasonable intrusion upon [his] physical solitude or seclusion[.]"[9] See R.I. Gen. Laws § 9-1-28.1(a)(1).

---

> consumer as: 'He or that which consumes, wastes, squanders, or destroys. One who uses up an article produced, thereby exhausting its exchangeable value; One who purchases goods or pays for services; a customer, purchaser.' (2nd ed.1984). The American Heritage Dictionary defines consumer as: 'One that consumes; especially one that acquires goods or services for direct use or ownership rather than for resale or use in production and manufacturing.' (4th ed.2000).

IFC Credit Corp., 543 F. Supp. 2d at 938.

[9] Although Laccinole does not say so specifically in Count IV, the Court gathers that he means to allege an unreasonable

13

> In order to recover for a violation of this right, it must be established that: (A) It was an invasion of something that is entitled to be private or would be expected to be private; (B) The invasion was or is offensive or objectionable to a reasonable man[.]

R.I. Gen. Laws § 9-1-28.1(a)(1)(i). There is little case law surrounding this privacy right. See DaPonte v. Ocean State Job Lot, Inc., 21 A.3d 248, 251-53 (R.I. 2011) (employer forcefully slapping a sticker on employee's outer garment in middle of store not an unreasonable intrusion); Swerdlick v. Koch, 721 A.2d 849, 857-58 (R.I. 1998) (photographing activities "in plain view of the public" not an unreasonable intrusion, and psychological distress induced by such surveillance not actionable under statute); Washburn v. Rite Aid Corp., 695 A.2d 495, 500 (R.I. 1997) (pharmacy's unauthorized disclosure of drug records an unreasonable intrusion); Pontbriand v. Sundlun, 699 A.2d 856, 863-64 (R.I. 1997) (governor's release of bank depositor's personal information to media outlets not an unreasonable intrusion because information not wrongfully acquired); Clift v. Narragansett Television L.P., 688 A.2d 805, 814–15 (R.I. 1996) (reporter's single telephone call inquiring into a suicide not an unreasonable intrusion).

---

intrusion upon his physical solitude or seclusion based on Compl. ¶¶ 57, 75. In any event, the other interests protected by the Privacy Act are plainly inapplicable here. See R.I. Gen. Laws § 9-1-28.1(2)-(4).

14

As for this Court, it found that a plaintiff adequately pleaded an unreasonable intrusion of solitude or seclusion where her doctor published a book allegedly divulging information revealed during therapy. See Lisnoff v. Stein, 925 F. Supp. 2d 233, 238-240 (D.R.I. 2013). Additionally, this Court denied a defendant's motion for summary judgment where the plaintiff had produced evidence that the defendant, her faculty advisor, had broken into her apartment, raped her, and disclosed sexual details to another party. See Liu v. Striuli, 36 F. Supp. 2d 452, 479-80 (D.R.I. 1999). This Court also found on summary judgment that a nursing student who had been subject to prying questions about her weight and diet by school administrators "state[d] an actionable claim," and that a "literal reading of the Privacy Act reaches the perimeter of this claim." See Russell v. Salve Regina College, 649 F. Supp. 391, 404 (D.R.I. 1986).

Significantly, "[i]n passing § 9-1-28.1, the Legislature explicitly afforded protection to the four interests encompassed within the 'common law tort' recognized by" the Restatement (Second) of Torts. Pontbriand, 699 A.2d at 863. The first of these four interests is the interest in privacy from "unreasonable intrusion upon . . . seclusion." Restatement (Second) of Torts § 652B. Furthermore, the R.I. Supreme Court has elsewhere drawn approvingly on the Restatement (Second) of Torts § 652B in its unreasonable intrusion analysis. See Swerdlick, 721 A.2d at 857

15

n.11. The Restatement indicates that repeated unwanted telephone calls may constitute unreasonable intrusions upon seclusion. See Restatement (Second) of Torts § 652B cmt. b, illustration 5. The question turns largely on whether the reasonable person would find the "persistence and frequency" of the calls offensive. See id. § 652B cmt. d.

Laccinole alleges that Appriss called his cellular telephone more than sixty times after he asked to receive no further calls. Compl. ¶ 34. Furthermore, he asserts that, at least thirty times, Appriss called him thirty seconds after he had ended a previous call. Id. ¶ 40. One day, Appriss purportedly called Laccinole once every hour for thirteen consecutive hours. Id. ¶ 41. Additionally, Laccinole was allegedly unable to independently stop the calls because he lacked a PIN. Id. ¶ 27. Finally, Laccinole has apparently sought to protect his privacy interests by registering for the do-not-call list. Id. ¶ 45; see also id. ¶¶ 51-52, 54. Given these allegations, and considering that today cellular telephones are regularly kept on or near one's body, a reasonable person might conclude that Appriss's persistent and frequent calls invaded an area of expected privacy in an objectionable or offensive manner. Therefore, the Court finds that Laccinole states a plausible claim for relief under the Privacy Act.

16

IV. CONCLUSION

Based on the foregoing reasons, Defendant Appriss Inc.'s Motion to Dismiss, ECF No. 6, is DENIED as to Counts I and IV and GRANTED as to Counts II and III.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date: April 13, 2020